STATE OF NORTH CAROLINA v. MICHAEL ALAN PARKER, SR.

No. COA94-1045

(Filed 5 July 1995)

1. **Criminal Law § 557 (NCI4th)— first-degree sexual offense and indecent liberties—defendant's threats to blow up women's shelter—suspicious package at courthouse—no mistrial**

There was no abuse of discretion in not granting a mistrial in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant's children testified that their family had left a battered women's shelter because their father had threatened to blow up the shelter, but defendant's objection was sustained, the answer stricken, and the jury instructed to disregard that statement. There was also no abuse of discretion in not granting a mistrial where a suspicious package was found in an entrance to the courthouse after that testimony; the courthouse was cordoned off and searched and extra security measures were taken; the trial court told the jury that the package was in the possession of the SBI and that the court could not discuss the contents of the package because officials were conducting an investigation; the court also informed the jury that the courthouse had been searched and that law enforcement officials had allowed the courthouse to be occupied again; the court asked each juror individually whether anything that had occurred would affect their verdict and whether each juror would still be able to render a fair and impartial verdict; and the jurors each assured the court of their ability to serve.

**Am Jur 2d, Criminal Law § 646.**

**2. Indictment, Information, and Criminal Pleadings § 42 (NCI4th)— first-degree sexual offense and taking indecent liberties with minor—bill of particulars—variance with indictment**

The trial court did not err in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant was indicted in case number 93 CRS 1014 for first-degree sexual offense and the State's response to defendant's request for a bill of particulars listed the charge as "93-CRS-1014—Indecent Lib." and included a statement that the victim had been anally penetrated. The State's evidence at trial was consistent with the information provided in the bill of particulars, defendant was in no way misled, the clerical error in listing the charge as "Indecent Lib." did not amend the original indictment charging first degree sexual offense, and defendant was not prejudiced.

**Am Jur 2d, Indictments and Informations §§ 159 et seq.**

**3. Grand Jury § 2 (NCI4th)— grand jury—reconvened—oral application**

The trial court did not err by denying defendant's motion to dismiss a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where a grand jury was selected and discharged, the district attorney made an oral application to the trial judge to have the grand jury reconvened, the court ordered that the grand jury be reconvened, and defendant was indicted. Assuming that N.C.G.S. § 15A-622(g) requires a written application to the trial court or a written order from the trial judge, certain technical violations concerning the grand jury proceedings do not render an otherwise valid indictment fatally defective.

**Am Jur 2d, Grand Jury §§ 10, 11.**

**4. Evidence and Witnesses § 2593 (NCI4th)— attorney— motion to be released from representation—denied—testimony at evidence tampering hearing**

The trial court did not err in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child by denying defense counsel's motion to be released from representation where defense counsel was called as a witness during a *voir dire* hearing to determine whether evidence had

been tampered with or altered. Defendant's attorney did not testify on behalf of defendant, but on a collateral matter regarding the attorney's handling of certain evidence; Rule 5.2(c) of the North Carolina Rules of Professional Conduct provides that a lawyer may continue the representation until it is apparent that the lawyer's testimony is or may be prejudicial to the client. Defense counsel's testimony was taken during a voir dire hearing outside the presence of the jury and defendant has shown no prejudice.

**Am Jur 2d, Witnesses §§ 97-99.**

**Defense attorney as witness for his client in state criminal case. 52 ALR3d 887.**

**Calling accused's counsel as a prosecution witness as improper deprivation of right to counsel. 88 ALR2d 796.**

5. **Criminal Law § 441 (NCI4th)— prosecutor's closing argument—State's witnesses—not paid to testify—fees already approved—no objection—no prejudice**

There was no gross impropriety amounting to prejudicial error in a prosecution for first-degree sexual offense and taking indecent liberties with a child where the prosecutor argued to the jury that the State's witnesses were not paid to testify but the court had already signed orders for expert witness fees for three of the State's witnesses. However, the court had informed counsel that it would be absent during certain portions of the closing arguments and defendant did not object to the trial judge being absent or to the State's argument.

**Am Jur 2d, Trial §§ 692, 694.**

6. **Criminal Law § 754 (NCI4th)— indictments—multiple counts—instructions**

There was no error in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant contended that the court erred in refusing to charge the jury as to each count of the indictments separately, but the court's instructions, taken in their entirety, make it clear that the jury was to consider each charge separately in its deliberations.

**Am Jur. 2d, Trial §§ 1242, 1243, 1247.**

**7. Evidence and Witnesses § 3130 (NCI4th)— child sexual abuse—medical examinations of children other than victims—offered to support defendant—not admissible**

The trial court did not err in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child by refusing to allow defendant to introduce the results of medical examinations of other minor children who did not testify at trial but who had allegedly participated in and witnessed the abuse of the victims who did testify and defendant testified that he did not abuse any of his children. N.C.G.S. § 8C-1, Rule 608(b).

**Am Jur 2d, Witnesses §§ 632 et seq.**

**8. Evidence and Witnesses § 2333 (NCI4th)— child sexual abuse—pediatrician—qualified as expert**

The trial court did not err in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant contended that a State's witness was allowed to testify concerning matters in which he was not competent to testify, but the witness was allowed to testify without objection as an expert in pediatrics and he testified concerning his examination of the youngest victim that there was vaginal trauma statistically consistent with previous penetration.

**Am Jur 2d, Witnesses §§ 53-56.**

**9. Evidence and Witnesses § 364 (NCI4th)— child sexual abuse—use of marijuana—context of crime—admissible**

There was no error in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child in allowing one victim to testify concerning defendant's use of marijuana just before the abuse. When evidence leading up to a crime is part of the scenario which helps explain the setting, there is no error in permitting the jury to view the criminal episode in the context in which it happened. Furthermore, defendant did not object to another witness testifying that defendant smoked marijuana on several occasions.

**Am Jur 2d, Evidence § 450.**

**10. Evidence and Witnesses § 762 (NCI4th)— interview with social worker—testimony by detective—tape of interview admitted by defendant—no prejudice from detective's testimony**

There was no error in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant contended that the court erred in allowing a detective to testify regarding statements made by a victim in an interview with a social worker but defendant introduced the entire videotape.

**Am Jur 2d, Evidence § 687.**

**Admissibility of videotape film in evidence in criminal trial. 60 ALR3d 333.**

**Modern status of rule regarding necessity for corroboration of victim's testimony in prosecution for sexual offense. 31 ALR4th 120.**

**11. Evidence and Witnesses § 747 (NCI4th)— inadmissible evidence—objection sustained, motion to strike allowed, jury instructed—no error**

There was no error in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant contended that the court erred in allowing certain testimony, but the trial court sustained defendant's objection to the testimony, allowed defendant's motion to strike, and instructed the jury to disregard the information.

**Am Jur 2d, Appellate Review § 222.**

**12. Evidence and Witnesses § 762 (NCI4th)— evidence of same import admitted without objection—no error**

There was no error in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant contended that the trial court erred by admitting the testimony of the program director for a battered women's clinic regarding several calls made by defendant to the clinic because the caller identified himself as defendant but the program director did not previously know his voice. Defendant in his testimony acknowledged making calls to the clinic to inquire about his children.

**Am Jur 2d, Appellate Review § 753.**

**13. Evidence and Witnesses § 3130 (NCI4th)— testimony of doctor supporting testimony of codefendant—excluded— no error**

There was no error in a prosecution for multiple counts of first-degree sexual offense and taking indecent liberties with a child where defendant contends that the trial court erred in excluding the testimony of a doctor which was offered in support of the testimony of a codefendant who was cross-examined about a statement she had made to the doctor. N.C.G.S. § 8C-1, Rule 608(b) prohibits the use of extrinsic evidence to prove or disprove specific instances of conduct.

**Am Jur 2d, Witnesses §§ 992, 1001.**

**14. Evidence and Witnesses § 2929 (NCI4th)— State's witness—examination by State—contradiction with prior statement—no extrinsic evidence**

There was no error in a prosecution for multiple counts of first-degree sexual abuse and taking indecent liberties with a child where one of the State's witnesses testified that he had seen defendant and several of the codefendants walking around the trailer park but did not remember what they were wearing and the prosecutor asked if the witness remembered what he had told him in the presence of a detective and the witness testified as to what he had said that people in the crowd were wearing. The State did not attempt to offer extrinsic evidence to challenge the truthfulness of its own witness's memory.

**Am Jur 2d, Witnesses §§ 992-996.**

Appeal by defendant from judgment entered 4 February 1994 by Judge Zoro J. Guice, Jr., in Henderson County Superior Court. Heard in the Court of Appeals 6 June 1995.

Defendant was convicted of eight counts of first degree sexual offense, G.S. 14-27.4(a)(2), and four counts of taking indecent liberties with a child, G.S. 14-202.1. Defendant was sentenced to eight consecutive life sentences for the eight first degree sexual offense convictions and four consecutive ten year terms of imprisonment for the taking indecent liberties with a child convictions. At trial the State's evidence tended to show the following: Defendant's three children, M, S and G Parker, all testified to several specific instances of sexual abuse. M, nine years old, testified to three specific instances of abuse.

STATE v. PARKER

[119 N.C. App. 328 (1995)]

On one occasion, defendant took M to his grandmother's house, where she removed their clothes and got on top of him on the bed and jumped up and down on his private parts. Defendant watched and did nothing. On another occasion, defendant took M out to the woods where his grandmother and four other people were present. Defendant took M's clothes off and inserted something "hard" into his rectum. One of the spectators, Travis Gordon, put his penis in M's mouth. Defendant also placed his penis in M's mouth. M testified to another similar incident with the same four people.

S, defendant's eleven year old daughter, also testified that defendant abused her. On one occasion, when her mother was absent, defendant called her into the bedroom where he and two other men were smoking "pot." Defendant pulled down S's pants and threw her on the floor and inserted a spoon into her vagina and moved it around. Defendant took blood that was on the spoon, put it in a cup and drank it while the others were standing around singing with lit candles.

G, defendant's seven year old daughter, testified that defendant committed similar acts of sexual abuse to her. G testified that on one occasion, defendant placed a brush handle into her vagina. Medical examinations of the three victims corroborated each of the victims' testimony and indicated a diagnosis of sexual abuse. Dr. John Carter, an expert in adolescent psychiatry, evaluated the three victims and found that each victim experienced emotional and behavioral characteristics consistent with sexual abuse.

Defendant testified and denied any abuse. From judgment entered upon the jury's guilty verdicts, defendant appeals.

*Attorney General Michael F. Easley, by Associate Attorney General Gail E. Weis, for the State.*

*J. Michael Edney for defendant-appellant.*

EAGLES, Judge.

Defendant brings forward numerous assignments of error. After careful review of the record and briefs, we find no prejudicial error.

I.

[1] Defendant first contends that the trial court erred in denying both his motions for mistrial. We disagree. Defendant's first motion for mistrial came during M's testimony. Prior to trial, defendant filed a

Motion *in Limine* to exclude testimony about defendant's alleged threat to blow up the battered women's shelter where the victims were staying. During M's testimony, in response to the State's question asking why M and his family left the shelter, nine year old M answered, "The reason that we left is because my daddy forced [sic] to bomb the place." Defendant immediately moved for mistrial. The trial court instructed the jury to disregard M's statement and that it was not a proper statement for their consideration. S also testified that when the family left the battered women's shelter, their mother went to the hospital "and then my dad threatened to bomb the place." Defendant's objection was sustained, the answer was stricken from the record and the jury was instructed to disregard that statement. Defendant did not make a motion for mistrial during S's testimony.

Defendant's second motion for mistrial concerned a suspicious package that was found in one of the entrances to the courthouse. The package was found after M and S testified. After the package was found, the courthouse was cordoned off and searched and extra security measures were taken. The trial court informed the jury that the package was in the possession of the State Bureau of Investigation and that the court could not discuss the contents of the package because law enforcement officials were conducting an ongoing investigation. The trial court also informed the jury that the courthouse had been searched and that law enforcement officials had allowed the courthouse to be occupied again. The trial court asked each juror individually whether anything that had occurred would affect their verdict and whether each juror would still be able to render a fair and impartial verdict. The jurors each assured the court of their ability to serve.

A motion for mistrial is within the trial court's discretion. *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991).

"Not every disruptive event occurring during the course of trial requires the court automatically to declare a mistrial," and if in the sound discretion of the trial judge it is possible despite the untoward event, to preserve defendant's basic right to receive a fair trial before an unbiased jury, then the motion for mistrial should be denied. On appeal, the decision of the trial judge in this regard is entitled to the greatest respect. He is present while the events unfold and is in a position to know far better than the printed record can ever reflect just how far the jury may have been influenced by the events occurring during the trial and

whether it has been possible to erase the prejudicial effect of some emotional outburst. Therefore, unless his ruling is clearly erroneous so as to amount to a manifest abuse of discretion, it will not be disturbed on appeal.

*State v. Moore*, 335 N.C. 567, 598, 440 S.E.2d 797, 815 (1994) (quoting *State v. Blackstock*, 314 N.C. 232, 244, 333 S.E.2d 245, 253 (1985)). We conclude that the trial court did not abuse its discretion in denying defendant's motions for mistrial.

II.

[2] Defendant next contends that the trial court erred in holding that the State was not bound by the charge as differently stated in its bill of particulars. Defendant was indicted in case number 93 CRS 1014 of first degree sexual offense. In response to defendant's request for a bill of particulars pursuant to G.S. 15A-925, the State responded:

93-CRS-1014—Indecent Lib.—this occurred in summer of 1992 sometime after the above events and occurred in a garage at their home in Saluda. Defendant stripped the victim and put his penis in the victim's butt.

The function of a bill of particulars is to inform the defendant of the nature of the evidence the State intends to offer against him and to limit the evidence to the items and transactions stated in the bill of particulars. *State v. Wadford*, 194 N.C. 336, 338, 139 S.E. 608, 609 (1927). Defendant contends that since the charge of indecent liberties is not a lesser included offense of first degree sexual offense, the trial court should have dismissed the first degree sexual offense charge. A bill of particulars is not a part of the indictment, nor is it a substitute for or amendment to the indictment. *Id.* The State's evidence at trial was consistent with the information provided in the bill of particulars. Defendant was in no way misled. The clerical error in the bill of particulars listing the charge as "Indecent Lib." did not amend the original indictment charging first degree sexual offense. Defendant was not prejudiced by this clerical mistake. This assignment of error fails.

[3] Defendant also contends that the grand jury was improperly convened and that the trial court erred in denying defendant's motion to dismiss the indictments. G.S. 15A-622(g) provides that, "At any time when a grand jury is in recess, a superior court judge may, upon application of the prosecutor or upon his own motion, order the grand jury reconvened for the purpose of dealing with a matter requiring grand

jury action." In denying defendant's motion to dismiss the indictment, the trial court made findings of fact to the effect that: On 4 January 1993 a grand jury was duly selected and sworn and discharged after completing its work. Sometime after 29 January 1993, the Henderson County District Attorney, Alan C. Leonard, made an oral application to the trial court judge to have the grand jury reconvened. As a result of the oral application to the trial court, the trial court ordered and authorized the District Attorney to institute the necessary proceedings for reconvening the grand jury. On 8 February 1993, the grand jury was reconvened and issued the true Bills of Indictments against defendant. The trial court concluded that the oral application made by the District Attorney to the trial court constituted substantial compliance with G.S. 15A-622(g) and denied defendant's motion to dismiss.

Assuming, without deciding, that the provisions of G.S. 15A-622(g) require a written application to the trial court or a written order from the trial judge, we have held in other contexts that certain technical violations concerning the grand jury proceedings do not render an otherwise valid indictment fatally defective. In *State v. Reep*, 12 N.C. App. 125, 182 S.E.2d 623 (1971), this Court held that failure to return bills of indictment strictly according to statute was not prejudicial error. *See also State v. Avant*, 202 N.C. 680, 163 S.E. 806 (1932) (no error in failure of grand jury foreman to endorse a bill of indictment or to include in the indictment the names of the State's witnesses who were examined before the grand jury); *State v. Midyette*, 45 N.C. App. 87, 262 S.E.2d 353 (1980) (signature of grand jury foreman pursuant to statute is merely directory and does not invalidate an indictment). Defendant has shown no prejudice from the lack of a written application or order of the trial court. Accordingly, we conclude that the trial court did not err in denying defendant's motion to dismiss.

III.

[4] Defendant further contends the trial court erred in denying defendant's counsel's motion to be released as defendant's attorney. During the course of the trial, the State called defendant's counsel to testify during a *voir dire* hearing to determine whether evidence had been tampered with or altered. After hearing the testimony of defense counsel, J. Michael Edney, and two other witnesses, the trial court concluded that defense counsel did not unlawfully alter, destroy or

conceal any evidence in the case. Rule 5.2(b) of the North Carolina Rules of Professional Conduct states:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm ought to be called as a witness on behalf of the client, the lawyer shall withdraw from the conduct of the trial and his or her firm, if any, shall not continue representation in the trial, except that the lawyer may continue the representation and the lawyer or a lawyer in his or her firm may testify under the circumstances enumerated in (a) above.

Here, defendant's attorney did not testify on behalf of defendant, but on a collateral matter regarding the attorney's handling of certain evidence. Rule 5.2(c) provides that if a lawyer learns that he "may be called as a witness other than on behalf of his client, the lawyer may continue the representation until it is apparent that the lawyer's testimony is or may be prejudicial to the client." N.C.R. Professional Conduct, Rule 5.2(c). Furthermore, defendant's counsel's testimony was taken during a *voir dire* hearing outside the presence of the jury. Defendant has shown no prejudice from defense counsel's testimony. This assignment of error is overruled.

IV.

**[5]** Defendant next contends that the trial court erred in failing to intervene during the State's closing argument. Defendant contends that the State argued in its closing argument that the State's witnesses were not paid to testify. The trial court, however, had already signed orders for expert witness fees to be paid to the State's three expert witnesses. The trial court had informed counsel for both sides that he would be absent during certain portions of the closing arguments. Defendant did not object to the trial judge being absent from the courtroom during portions of closing argument, nor did defendant raise any objections at trial to the State's argument that its expert witnesses had not been paid to testify. Upon failure to object to statements made during closing argument, the standard of review is whether the statements amounted to such gross impropriety as to require the trial court to act on its own motion. *State v. Oliver*, 309 N.C. 326, 356, 307 S.E.2d 304, 324 (1983). Counsel should refrain from representations in oral argument that are incorrect or untrue. Even so, we conclude that on these facts, the statements did not amount to such gross impropriety as to amount to prejudicial error.

**[6]** Defendant also contends that the trial court erred in refusing to charge the jury as to each count of the indictments separately. The trial court in its charge to the jury stated:

> Now, ladies and gentlemen of the jury, there are 12 cases involved, and the court is going to submit to you a separate verdict sheet for each case. You will note that the verdict sheet, at the top, will have the heading of the case with the word verdict, and that will be followed by this language.

The trial court then proceeded to inform the jury that they could either vote guilty or not guilty on each charge in the indictment which was represented by each of the separate verdict sheets. When reviewing a trial court's charge to the jury, the instructions must be considered in their entirety. *State v. Davis*, 321 N.C. 52, 59, 361 S.E.2d 724, 728 (1987). The trial court's instructions, taken in their entirety, make it clear that the jury was to consider each charge separately in its deliberations. *See State v. Schultz*, 294 N.C. 281, 284, 240 S.E.2d 451, 454 (1978). This assignment of error also fails.

V.

**[7]** Defendant's next several assignments of error concern the testimony of various witnesses and the allegedly erroneous admission of evidence. We conclude that all of these assignments of error are without merit. Defendant contends that the trial court erred in refusing to allow defendant to introduce the results of medical examinations of other minor children who did not testify at trial. Defendant offered the medical examinations of several other minor children who were children of the codefendants who allegedly participated and witnessed the abuse of the victims who testified at trial. The trial court held that defendant's evidence was inadmissible extrinsic evidence prohibited by Rule 608(b) of the North Carolina Rules of Evidence and irrelevant evidence pursuant to Rule 402. We agree.

Rule 608(b) provides that, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609 may not be proved by extrinsic evidence." Defendant testified that he did not abuse any of his children. Defendant also offered the medical examination of A Robinson, a child of one of the codefendants. S testified that when defendant took her to the woods behind her grandmother's house and abused her in front of several people holding lit candles, another young girl, A Robinson, "started screaming at first and then

she jumped up and she had no clothes on and she started running and her dad jumped up and started chasing after her through the woods." Defendant offered the medical examination of A Robinson to show that she showed no signs of sexual abuse in an effort to support his credibility. The results of A Robinson's medical examination is the type of extrinsic evidence which is prohibited by the rule when it is offered to support the credibility of a witness. Furthermore, defendant was not charged with sexually abusing A Robinson; S did not testify that she saw A Robinson being abused. Whether A Robinson was abused by a codefendant is irrelevant to the charges against defendant and was properly excluded pursuant to Rule 402.

[8] Defendant contends that the State's expert witness, Dr. Charles Marston, was allowed to testify concerning matters in which he was not competent to testify. Dr. Marston was allowed to testify as an expert in the field of pediatrics without objection. Dr. Marston testified about the results of his examination of the youngest victim, G Parker. He testified that an examination of G revealed vaginal trauma "statistically [] consistent with previous penetration." Dr. Marston's testimony in this regard is well within the knowledge of experts in pediatrics.

[9] Defendant next contends that the trial court erred in allowing M Parker to testify concerning defendant's use of marijuana just before the episodes of abuse. When evidence leading up to a crime is part of the scenario which helps explain the setting, there is no error in permitting the jury to view the criminal episode in the context in which it happened. *State v. Agee*, 326 N.C. 542, 548-49, 391 S.E.2d 171, 175 (1990). Furthermore, defendant did not object to S testifying that defendant smoked marijuana on several occasions. "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Townsend*, 99 N.C. App. 534, 537, 393 S.E.2d 551, 553 (1990) (quoting *State v. Brooks*, 83 N.C. App. 179, 191, 349 S.E.2d 630, 637 (1986)).

Defendant's wife, Sandra Parker, also testified that she and defendant were involved in cashing an altered check. Defendant's objection was sustained and the objectionable testimony stricken from the record. Defendant's assignments of error in this regard are without merit.

[10] Defendant further contends that the trial court erred in allowing Detective Walter Harper to testify regarding statements made by S in

an interview with a Department of Social Services social worker. Defendant, however, introduced into the evidence the entire video-tape of Detective Harper's interview with S which further corrobo-rated S's testimony. "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Townsend*, 99 N.C. App. 534, 537, 393 S.E.2d 551, 553 (1990) (quoting *State v. Brooks*, 83 N.C. App. 179, 191, 349 S.E.2d 630, 637 (1986)).

**[11]** In a related assignment of error, defendant contends the trial court erred in allowing Detective Harper to testify concerning S's statement about Michael McAbee. McAbee had been previously tried and convicted in Henderson County for second degree murder. S told Detective Harper in the interview that McAbee was "[t]he Mike that burned his baby." The trial court sustained defendant's objection to Detective Harper's testimony regarding his knowledge of McAbee, allowed defendant's motion to strike and instructed the jury to disre-gard the information. This assignment of error is without merit.

**[12]** Defendant further contends that the trial court erred in allowing Pam Perkins, program director for the battered women's shelter known as Mainstay, to testify regarding several calls made by defend-ant to Mainstay inquiring about the whereabouts of his wife and chil-dren. Ms. Perkins testified that the caller identified himself as defend-ant but that she did not previously know his voice so as to be able to personally identify defendant as the caller. Defendant, however, testi-fied acknowledging that he made several calls to Mainstay to inquire about his children and that eventually he was informed that if he con-tinued to call they would inform the sheriff's department. "Where evi-dence is admitted over objection, and the same evidence has been previously admited or is later admitted without objection, the benefit of the objection is lost." *State v. Townsend*, 99 N.C. App. 534, 537, 393 S.E.2d 551, 553 (1990) (quoting *State v. Brooks*, 83 N.C. App. 179, 191, 349 S.E.2d 630, 637 (1986)).

**[13]** Defendant next contends that the trial court erred in excluding the testimony of Dr. John Reinhardt. Defendant offered Dr. Reinhardt to support the testimony of codefendant Tabitha Taylor who was cross-examined by the State about a statement she made to Dr. Reinhardt during an interview. Defendant offered Dr. Reinhardt's tes-timony to discuss the entire interview so that the statement used to impeach Ms. Taylor by the State could be considered in its proper context. Rule 608(b) of the North Carolina Rules of Evidence specifi-

cally prohibits the use of extrinsic evidence to prove or disprove specific instances of conduct.

[14] Finally, defendant contends that the trial court erred in allowing the State to impeach one of its own witnesses. John Rogers testified he saw defendant and several of his codefendants walking around the trailer park at approximately 2:00 a.m. When Rogers testified that he did not remember what the people were wearing, the prosecutor asked Rogers if Rogers remembered what he told him in the presence of Detective Harper at 1:00 p.m. that afternoon in the prosecutor's office. Defendant answered, "I said the girls were wearing white shirts and nothing on underneath them, and that's all that I remember." When the prosecutor asked what the other people in the crowd were wearing, Rogers answered, "the girls were wearing white shirts and men were wearing dark clothes." Defendant contends that the State was allowed to improperly impeach its witness with a prior inconsistent statement.

> A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony.

*State v. Williams*, 322 N.C. 452, 455, 368 S.E.2d 624, 626 (1988) (quoting *State v. Green*, 296 N.C. 183, 192, 250 S.E.2d 197, 203 (1978)). The State did not attempt to offer extrinsic evidence, such as Detective Harper's additional testimony, to challenge the truthfulness of Rogers's memory.

We need not address defendant's remaining assignments of error as they are clearly without merit. In sum, defendant received a fair trial free from prejudicial error.

No error.

Judges WYNN and MARTIN, MARK D., concur.